UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN CHARETTE, JR., )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>RYAN DINSMORE, et al., )<br>)<br>    Defendants. ) | 1:24-cv-00355-JAW |

**ORDER AFFIRMING RECOMMENDED DECISION OVER OBJECTION**

A federal magistrate judge recommends a federal district court dismiss a plaintiff's 42 U.S.C. § 1983 claims against two municipalities and two police chiefs, while allowing claims against other police officers to proceed, on the basis of the plaintiff's failure to plead any involvement by the chiefs or official policies by the municipalities. The plaintiff objects, claiming the municipalities and police chiefs have official policies of using excessive force, failing to use body cameras, and manipulating laws to avoid probable cause obligations, such that dismissal is inappropriate. The court concludes the complaint fails to allege that the chiefs were involved in the purported use of force or that the officers acted in accordance with any official town policy, and thus affirms the magistrate judge's recommended decision.

**I.  BACKGROUND**

    **A.  Procedural Background**

On October 21, 2024, Brian Charette, Jr., appearing pro se, filed a civil complaint against Sergeant Ryan Dinsmore, Officer Riley Dowe, Officer Jake

Whitley, Sergeant Kyle McDonald, and Chief William Bonney of the city of Waterville, Maine Police Department; the city of Waterville, Maine; Sergeant Gene Richard, Sergeant Adam Sirois, and Chief Rick Stubbert of the town of Oakland, Maine Police Department; the town of Oakland, Maine; and an unknown trooper in the Maine State Police (collectively, the Defendants). *Compl. for a Civ. Case* at 3-6 (ECF No. 1) (*Compl.*). Mr. Charette alleged that on the evening of January 20, 2023, while he was driving in Waterville, Officer Dowe pulled up behind his vehicle, at which time Plaintiff pulled into a gas station and then reentered the roadway traveling in the opposite direction. *Id.* at 9. Plaintiff explains he was not speeding, but had concerns based on prior interactions with the Waterville Police Department unrelated to the present case. *Id.* at 9-10. Mr. Charette drove to the street of his residence, at which time he ran into another person's yard, climbed onto a trailer, and raised his hands above his head. *Id.* at 10. Seeing Sergeant Dinsmore approaching with a K-9 unit, Plaintiff asserts he stated, with his hands remaining on his head, "alright you got me." *Id.*

However, Mr. Charette claims that Sergeant Dinsmore, in the presence of Officer Dowe, ordered the police dog to bite him. *Id.* Mr. Charette asserts the dog continued to bite him, despite his pleas to stop, while Officer Whitley and Sergeants McDonald, Richard, and Sirois watched without intervening or seeking to place him in handcuffs. *Id.* He further alleges that Sergeant Dinsmore and Officers Dowe and Whitley punched and slapped him to the point of losing consciousness, and that he was later informed the other Waterville police officers and a state trooper also

2

participated. *Id.* at 11. Mr. Charette was treated at the hospital before being transported to the Waterville police station for booking, at which time he alleges he heard the police officers make derogatory comments about him and his conduct during the arrest. *Id.* at 11-12. Plaintiff was transported to and held at the Kennebec County Jail until he was sentenced for unspecified crimes and transported to Maine state prison. *Id.* at 12.

Mr. Charette sued the Defendants for use of excessive force in violation of his civil rights under 42 U.S.C. § 1983. *Id.* at 2. He also filed an application to proceed without prepayment of fees pursuant to 28 U.S.C. § 1915 on November 6, 2024, which the Court granted the next day. *Appl. to Proceed Without Prepayment of Fees* (ECF No. 7); *Order Granting Mot. to Proceed Without Prepayment of Fees and Costs* (ECF No. 8). Under the terms of this statute, a United States Magistrate Judge conducted a preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(a). *Recommended Decision After Rev. of Pl.'s Am. Compl.* (ECF No. 11) (*Rec. Dec.*). On January 27, 2025, the Magistrate Judge issued his recommendation that the district court dismiss the claims against the police chiefs and municipalities but allow the claims to proceed against the officers present during the events giving rise to Mr. Charette's complaint. *Id.* at 2-6. Mr. Charette objected to the recommended decision on February 18, 2025, asking the Court to allow his claims against the police chiefs and municipalities to proceed.[1] *Mot. for Recons. to*

---

[1] Mr. Charette characterizes his motion as a motion for reconsideration. *Mot. for Recons. to Not Dismiss Claims Against Municipality, and Claims Against the Chiefs of Police* at 1 (ECF No. 13) (*Pl.'s Obj.*). 28 U.S.C. § 636 permits written objections to a magistrate judge's recommendations and the Clerk of Court designated his motion as an objection to the Magistrate Judge's recommended decision.

*Not Dismiss Claims Against Mun., and Claims Against the Chiefs of Police* (ECF No. 13) (*Pl.'s Obj.*)

### B. The Magistrate Judge's Recommended Decision

Pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2)(B), the Magistrate Judge recommends the Court dismiss Mr. Charette's complaint against the police chiefs and municipalities for failure to state a claim. *Rec. Dec.* at 2, 5-6.

After reviewing the factual allegations, the Magistrate Judge describes the court's mandate to screen the claims of parties proceeding pursuant to § 1915 and to dismiss such claims if "the action is 'frivolous or malicious' or 'fails to state a claim on which relief may be granted.'" *Id.* at 3 (quoting 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. § 1915A(b) (screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim . . .; or (2) seeks monetary relief from a defendant who is immune from such relief")). Federal law requires a complaint to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 4 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard also applies to pro se litigants, the Magistrate Judge writes, but the court must construe his complaint liberally and hold it to less stringent standards than a complaint drafted by counsel. *Id.* (citing *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 U.S. Dist.

---

*Id.* The Court agrees with the Clerk of Court that this is the proper approach and considers Mr. Charette's motion under the standard for an objection under 28 U.S.C. § 636.

LEXIS 191506, at *4 (D. Me. Nov. 5, 2019) (citation amended) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

The Magistrate Judge evaluates Mr. Charette's excessive force claims under the "objective reasonableness" standard articulated by the United States Supreme Court in *Graham v. Connor,* 490 U.S. 386 (1989). *Id.* (citing *Graham*, 490 U.S. at 388) (applying the so-called "*Graham* factors" of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). Noting the First Circuit has held it is typically objectively unreasonable to use significant force on a compliant person who has ceased resisting arrest, the Magistrate Judge concludes Plaintiff's complaint alleged sufficient facts to "support a finding that the officers continued to use an elevated level of force capable of causing pain and serious injury (i.e., dog bites and punches) for an extended period after Plaintiff had ceased his prior resistance and was subdued sufficiently" and declines to recommend dismissal of Mr. Charette's excessive force claims against the officers present at his arrest on that basis. *Id.* at 5 (citing *Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008); *Jennings v. Jones*, 499 F.3d 2, 18 (1st Cir. 2007)).

Continuing to consider Plaintiff's claims against the police chiefs of the Waterville and Oakland Police Departments, respectively, the Magistrate Judge concludes Mr. Charette's complaint alleges no individual actions or personal involvement by Chiefs Bonney and Stubbert that violated his constitutional rights and thus recommends dismissal of the claims against the police chiefs. *Id.* at 5-6

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). The Magistrate Judge extends this recommendation to the municipalities named in Mr. Charette's complaint, concluding "[m]unicipalities are only liable under § 1983 for their official policies and customs" and that Plaintiff's complaint lacks any such allegations. *Id.* at 6 (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

At bottom, the Magistrate Judge recommends "the Court dismiss all claims and defendants except for the excessive force claims against Defendants Dinsmore, Dowe, Whitley, McDonald, Richard, Sirois, and the unknown state trooper." *Id.*

### C. Brian Charette, Jr.'s Objection

Mr. Charette objects to the Magistrate Judge's recommendation regarding the police chiefs and municipal defendants, asserting personal knowledge that these defendants "have a pattern of using the excuse the batteries died in the body cameras as a way to conc[eal] their wrongful acts towards persons whom they use excessive force on." *Pl.'s Obj.* at 1. He adds that municipal policy requires malfunctioning body cameras to be reported and fixed but claims his correspondence with Chief Stubbert indicates that the town of Oakland has not replaced deficient batteries in eighteen months since his incident. *Id.* The city of Waterville, he says, adopts the same excuse. *Id.*; *see also id.* at 2 ("This is also a common practice to say the batteries are dead to not have to release video"). Mr. Charette asserts both police departments use this

6

practice to "hide and conc[eal] evidence that might be harmful to police," especially in the context of complaints of excessive force against them. *Id.* at 1-2.

Mr. Charette continues that "Waterville uses a common practice of manipulation of laws to get around pulling vehicles over" and points out Chief Bonney has not reprimanded the officers for their conduct on the day of his arrest, contending "this is an unwritten policy to get away with stopping whoever they want." *Id.* at 2. Mr. Charette argues the use of force during his arrest violated police department policies and the law, and that the officers acted in bad faith in arresting him. *Id.* He asks the Court to "extend this for 30 days," noting he will be released from prison and have better access to a legal resources and possibly a lawyer at this point. *Id.*

## II. LEGAL STANDARD

The Plaintiff filed an objection to the Magistrate Judge's Recommended Decision, and the Court thus "shall make a de novo determination of those portions of the . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* 28 U.S.C. § 636(b)(1)(B). At the same time, the Court is "only obliged to perform de novo review of disputed portions of the report and recommendation." *United States v. J.C.D.*, 861 F.3d 1, 6 (1st Cir. 2017). Under this standard, the Court reviews factual findings for clear error, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999), and gives plenary review to pure questions of law. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

Mr. Charette's objection asserts new grounds for relief not raised in his complaint. First Circuit caselaw has held that an objection to a recommended

7

decision is not an opportunity to relitigate the issue by raising novel arguments. *Barden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984) ("Parties must take before the magistrate judge 'not only their "best shot" but all of their shots'"); *accord Orchard v. United States*, 332 F. Supp. 2d 275, 276 (D. Me. 2004) ("A litigant is not permitted to raise new issues to the district judge in his objections to the recommendation of the magistrate judge") (citing *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988)).

## III. DISCUSSION

Mr. Charette specifically objects to the Magistrate Judge's recommendation that the Court dismiss his claims against Chief Bonney, Chief Stubbert, and the municipalities of Waterville and Oakland. Because Mr. Charette has raised facts and arguments in his objection not presented to the Magistrate Judge, the Court could stop its analysis on this point. As just noted, the First Circuit is clear that a litigant, such as Mr. Charette, cannot raise new facts and arguments for the first time in objections to a magistrate judge's recommended decision. *See Barden*, 836 F.2d at 6; *Orchard*, 322 F. Supp. at 1318. This alone justifies this Court's rejection of Mr. Charette's objection and affirmance of the Magistrate Judge's recommended decision.

Despite Plaintiff's noncompliance with the directive and deadlines of District of Maine Local Rule 72.1(a),[2] the Court will exercise its discretion and consider the

---

[2] "Within 14 days after being served a copy of an order, report, proposed findings or a recommended decision of a United States Magistrate Judge entered under 28 U.S.C. § 636(b)(1), a party seeking review shall file an objection with an incorporated memorandum of law to those specific portions for which review is sought." D. ME. LOC. R. 72.1(a). Mr. Charette filed his objection nineteen

contents of Plaintiff's 42 U.S.C. § 1983 claims against the police chiefs and municipal defendants, including novel grounds raised in his objection, de novo in light of its obligation to liberally construe the filings of a pro se litigant and the First Circuit's aversion to dismissing claims based on procedural violations alone. *See Gakuba v. Frey*, Nos. 23-1084, 23-1095, 2024 U.S. App. LEXIS 18703, at *1 (1st Cir. Apr. 10, 2024) ("We review [the plaintiff's] pro se papers liberally") (citing *Erickson*, 551 U.S. at 94); 28 U.S.C. § 636(b)(1)(B-C); *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994) ("Our federal rules promote the disposition of claims on the merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits") (citing *Foman v. Davis*, 371 U.S. 178, 181-182 (1962)).

### A.    Claims against Chief Bonney and Chief Stubbert

The Court first considers the complaint for plausible facts justifying relief against Chief Bonney and Chief Stubbert (together, the Defendant Chiefs). After de novo review, however, the Court agrees with the Magistrate Judge that the complaint "does not contain any allegations showing that the two police chiefs had any involvement in the arrest or use of force." *Rec. Dec.* at 5. Indeed, the allegations in the complaint do not make any mention of the Defendant Chiefs at all. *See Compl.* at 8-15. The Supreme Court has clearly held that vicarious liability does not apply to § 1983 suits, such that "a plaintiff must plead that each Government-official

---

days after the Magistrate Judge's recommended decision. *Compare Rec. Dec.* (filed Jan. 27, 2025) *with Pl.'s Obj.* (filed Feb. 18, 2025).

9

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Further, the First Circuit explained the potential for supervisory liability on constitutional claims "requires a showing of 'supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" *Maldonado v. Fontanes*, 568 F.3d 263, 274-75 (1st Cir. 2009) (quoting *Estate of Bennett v. Wainwright*, 548 F.3d 155, 176-77 (1st Cir. 2008)).  As noted above, the factual allegations of Mr. Charette's complaint do not mention the Defendant Chiefs, let alone any conduct giving rise to supervisory liability under this standard.  *See Compl.* at 8-15.

Despite the absence of any factual basis in the complaint for Mr. Charette's theories against the Chiefs, his objection raises two new substantive grounds.  First, Plaintiff alleges "a pattern of using the excuse the batteries died in the body cameras as a way to conce[a]l their wrongful acts," asserting he "ha[s] knowledge that this has happen[e]d mult[iple] times and the police chiefs as well as the municipalities have not fixed the issue."  *Pl.'s Obj.* at 1.  He adds that "the letter the chief of Oakland police sent me states that the batteries are old and he is working to fix them.[ ]This is roughly 18 months after the incident.[ ]Still have not fixed them."  *Id.*  Second, Plaintiff alleges "Waterville uses a common practice of manipulation of laws to get around pulling vehicles over" and that "the Chief has not reprimanded or taken action for their acts."  *Id.* at 2.

"Under 42 U.S.C. § 1983, a supervisory official may be held liable for the behavior of his subordinates only if '(1) the behavior of [his] subordinates results in a

10

constitutional violation, and (2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (quoting *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 902 (1st Cir. 1988). To establish an "affirmative link" between a subordinate's conduct and a supervisor's action or inaction requires "proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1380 (1st Cir. 1995). Deliberate indifference "will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Id*.

Considering first Mr. Charette's claims that each Defendant Chief is aware of and complicit in the misuse of body cameras, the Court notes as a threshold matter that because vicarious liability is unavailable on a § 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, the alleged unconstitutional action is each Defendant Chief's failure to ensure the proper use of functional body cameras by their respective subordinates.

However, Plaintiff's contention regarding body cameras fails to demonstrate either Defendant Chief violated the Constitution in their own right or in their role as supervisor. Mr. Charette has not cited any authority for his view that there is a constitutionally enforceable requirement that law enforcement officers wear body

cameras, and the Court is not aware of any constitutionally protected right to body camera footage. Other federal courts that have considered the question have concluded no such right exists in the federal Constitution. *See, e.g.*, *Baca v. Anderson*, No. 22-cv-02461-WHO, 2022 U.S. Dist. LEXIS 186669, at *18-19 (N.D. Cal. Oct. 12, 2022) (dismissing a constitutional claim "[b]ecause [the plaintiff] has not shown that the asserted right to body camera footage is a constitutionally protected life, liberty, or property interest").

Further, Plaintiff has not demonstrated that the lack of fully functional body cameras "led inexorably" to the alleged use of unconstitutionally excessive force by the Defendant Chiefs' subordinates. *See Hegarty*, 53 F.3d at 1380. Indeed, on occasion, police officers in this country have used apparently excessive force that has been captured on body cameras, demonstrating that the presence of functional body cameras does not necessarily deter such conduct. *See, e.g.*, *Handy v. Weathersby*, No. 22-cv-4809, 2025 U.S. Dist. LEXIS 917, at *17-20 (N.D. Ill. Jan. 3, 2025) (denying defendant police officers' motion to dismiss an excessive force claim based on consideration of body camera footage); *Varnas v. Thompson*, No. 2:24-CV-02193-JAR-GEB, 2024 U.S. Dist. LEXIS 197164, at *9-16 (D. Kan. Oct. 30, 2024) (same). Thus, the Court cannot conclude that the Defendant Chiefs' purported failure to ensure their officers' body cameras had functioning batteries at all times "led inexorably" to the constitutional violation alleged by Mr. Charette.

Turning to Plaintiff's assertion regarding "manipulation of laws to get around pulling vehicles over," *Pl.'s Obj.* at 2, the Court notes as an initial matter that Mr.

Charette makes this allegation against only Waterville and its Chief. The Court thus considers this argument only as against Chief Bonney. Plaintiff does not allege Chief Bonney manipulated laws in his own right; rather, he charges Chief Bonney with "not reprimand[ing] or tak[ing] action" against his subordinates for their conduct. *Id.* As above, to establish supervisory liability under § 1983, a plaintiff must prove both a constitutional violation by the subordinates and an affirmative link between the supervisor's conduct and that violation. *Pineda*, 533 F.3d at 54.

The Court concludes the Plaintiff's argument fails to state a cognizable claim under § 1983 for two reasons. First, to support his allegation of a "common practice of manipulation of laws," Plaintiff references only one concrete fact: "Sadino, 2022 a Maine case Waterville police used a false narrative in the form of an an[o]nym[o]us informant to pull over a vehicle." *Pl.'s Obj.* at 2. After diligent research, the Court was unable to locate the case referenced by Mr. Charette, nor has he supported his implication that probable cause to search a vehicle can never be based on information from an informant. *Contra, e.g.*, *United States v. McFarlane*, 491 F.3d 53, 57 (1st Cir. 2007) ("A statement from a source can constitute the basis for probable cause . . . so long as there is a sufficient basis for crediting the source's reliability").

Second, Mr. Charette has not articulated a basis for the Court to conclude that any failure by Chief Bonney to reprimand his subordinates "inexorably led" to an encroachment on Plaintiff's constitutional rights. Mr. Charette makes no allegation in his complaint or objection that Waterville police officers supervised by Chief Bonney manipulated any laws to detain him, only that they used excessive force

13

during his arrest. The Court sees no affirmative link between Chief Bonney's alleged failure to reprimand his subordinates for manipulations of law to circumvent probable cause requirements and the purported use of unconstitutional force during Plaintiff's arrest. Indeed, as explained later, even assuming that such a failure exists on these allegations (which the Court does not find), the Court is unable to draw any connection between the supposed manipulation of the law or the alleged supervision failures and the facts in this case.

For the reasons stated, the Court agrees with the Magistrate Judge's recommendation to dismiss Mr. Charette's claims against Chief Bonney and Chief Stubbert. *Rec. Dec.* at 5-6.

### B. Claims against Municipalities

Turning to Mr. Charette's claims against the city of Waterville, Maine and town of Oakland, Maine (together, the Municipal Defendants), the Court reviews his complaint for allegations of an official policy or custom that violates constitutional rights. *See Monell*, 436 U.S. at 691 ("Municipalities are only liable under § 1983 for their official policies and customs"). After review, the Court again agrees with the Magistrate Judge's assessment that "Plaintiff has not plausibly alleged that the officers acted according to any official policy or custom of either municipality." *Rec. Dec.* at 6. In fact, Mr. Charette's only mention of policies in the complaint claims "Defendants failed to write use of force reports as policy mandates," indicating that an official policy does exist and that the individual officers acted outside it. *Compl.* at 15. At no point in the complaint does Plaintiff posit that the officers' alleged use

14

of force was sanctioned by an official municipal policy on behalf of either Municipal Defendant.

In his objection, Mr. Charette adds the allegations that each Municipal Defendant permits a practice of "using the excuse the batteries died in the body cameras as a way to conc[eal] their wrongful acts towards persons whom they use excessive force on" and of "manipulation of laws to get around pulling vehicles over." *Pl.'s Obj.* at 1-2. Beginning with his allegation regarding defective body cameras, as explained above, Mr. Charette has presented, and the Court is otherwise aware of, no support for his assertion of body camera footage as a constitutional right. *See, e.g.*, *Baca*, 2022 U.S. Dist. LEXIS 186669, at *18-19 (concluding "[the plaintiff] has not shown that the asserted right to body camera footage is a constitutionally protected life, liberty, or property interest"). In *Monell*, the Supreme Court recognized municipal liability under § 1983, but only for official policies or customs "responsible for a deprivation of rights protected by the Constitution." *Monell*, 436 U.S. at 690. Because Mr. Charette has not demonstrated his constitutional rights have been violated by deficient batteries in local police body cameras, the Court concludes he has failed to state a plausible § 1983 claim on this ground.

Turning to Mr. Charette's allegations of "manipulation of laws to get around pulling vehicles over," *Pl.'s Obj.* at 2, the Court again notes that he brings this claim against only the city of Waterville. Mr. Charette asserts "Waterville uses a common practice of manipulation of laws to get around pulling vehicles over," adding that "[t]his is an unwritten policy to get away with stopping whomever they want." *Id.*

15

However, as noted above, Mr. Charette provides only one purported example of such manipulation of laws—"Sadino, 2022 a Maine case"—that this Court was unable to locate despite its best efforts. Even assuming the truth of Mr. Charette's characterization of this case, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Plaintiff's vague reference to a single prior case does not present evidence that a municipal policymaker has implemented any such policy to support his conclusory assertion that the city of Waterville has an official policy of manipulation of laws. *Cf. Ponsa-Rabell v. Santander Sec. LLC*, 35 F.4th 26, 30 n.2 (1st Cir. 2022) (when considering whether to dismiss a case for failure to state a claim, courts "disregard any conclusory allegations"); *O'Brien v. Deutsche Bank Nat'l Tr. Co.*, 948 F.3d 31, 35 (1st Cir. 2020) (same).

Nor has Mr. Charette alleged, in either his complaint or objection, that Waterville police officers manipulated any laws to avoid probable cause requirements for traffic stops during his own arrest. His complaint describes in detail the events leading up to his arrest, informing the Court that he was driving under the speed limit in Waterville when he identified a police vehicle, driven by Officer Dowe, pulling out behind him. *Compl.* at 9-10. Mr. Charette explains he "immediately pulled into a gas station" and that Officer Dowe followed him. *Id.* at 9. Mr. Charette says that he then pulled out of the gas station and drove in the opposite direction until he

reached Elizabeth Street, at which time he "ran approximately 100 feet and jumped up on a trailer . . .. [and] [i]mmediately raised his hands over his head." *Id.* at 9-10. At no point in Mr. Charette's narrative of his arrest does he allege that he was pulled over by any member of the Waterville police department; rather, by his own account, he noticed police behind him, engaged in evasive driving maneuvers, and then himself stopped his vehicle and attempted to flee on foot. Mr. Charette's objection adds no further details regarding the circumstances of his arrest. *See generally Pl.'s Obj.* Mr. Charette's new allegation in his objection that "Waterville uses a common practice of manipulation of laws to get around pulling vehicles over," *id.* at 2, thus does not fit the facts of his case.

At bottom, the Court concludes Plaintiff failed to plead a plausible claim for relief against the Defendant Chiefs or Municipal Defendants under the well-pleaded complaint requirements set out by *Twombly*, 550 U.S. 544, and thus agrees with the Magistrate Judge's recommendation that Mr. Charette's claims against these defendants be dismissed.

## IV. CONCLUSION

Having performed a de novo review pursuant to 28 U.S.C. § 363(b)(1)(B), the Court AFFIRMS the Recommended Decision After Review of Plaintiff's Amended Complaint (ECF No. 11), OVERRULES the Plaintiff's Motion for Reconsideration to Not Dismiss Claims Against Municipality and Claims Against the Chiefs of Police (ECF No. 13), and accordingly DISMISSES without prejudice all claims in the Complaint for a Civil Case (ECF No. 1) against William Bonney as Chief of the

Waterville Police Department, Rick Stubbert as Chief of the Oakland Police Department, the city of Waterville, Maine, and the town of Oakland, Maine.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2025